25-cv-11501
Judge Thomas M. Durkin
Magistrate Judge Maria Valdez
Random Cat 2

BC

RECEIVED
9/23/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHRISTIAN NARKIEWICZ-LAINE
Plaintiff

-against-

THORNDALE BEACH NORTH CONDOMINUM ASSOCIATION

CHICAGOLAND COMMUNITY MANAGEMENT, INC.
Defendants

## COMPLAINT

Plaintiff Christian Narkiewicz-Laine ("Narkiewicz-Laine") by representing himself pro se, as and for his complaint against Defendants Thorndale Beach North Condominium Association, an Illinois not-for-profit Corporation ("Condominium Association") and Chicagoland Community Management, Inc. an Illinois Corporation alleges as follows:

### 1. JURISDICTION

1, This action is brought pursuant to the Fair Housing Act of 1968, as amended, 42 U.S.C. §§3601 et. seq., §3604 (f)(l), (f)(2), (f)(3)(B), and §3617.

2. Jurisdiction is conferred on this court by 28 U.S.C. §1331, §1343(a)(4), 28 U.S.C. §2201, and 42 U.S.C. §3613.

3. Venue is proper in the Northern District of Illinois, Eastern Division since Plaintiff Narkiewicz-Laine and all of the Defendants have resided within the boundaries thereof.

## II. PARTIES

4. Plaintiff, Narkiewicz-Laine, is a 73-year-old male person with multiple disabilities, including diabetes, epilepsy, severe chronic vertigo, and brain damage resulting from a traffic accident in 2002.

5. Plaintiff, Narkiewicz-Laine, is an owner of and has resided at 5901 N. Sheridan Road, Unit# 2F Chicago, Cook County, Illinois ("Unit") since 2009 and while taking care of his parents, Sulo M. Laine and Charlotte Narkiewicz-Laine, both stroke patients, since 1996 and for approximately a total of twenty-eight (28) years.

6. Plaintiff, Narkiewicz-Laine, is currently homeless and unable to reside in his residence since 2019 and 2021 and 2025 due to unsafe and unsanitary conditions and a health hazard caused by continuous sewer backups and catastrophic floods into his unit.

7. The Condominium Association is a condominium association registered as an Illinois not-for-profit corporation and is located at 5901 North Sheridan Road, Chicago, Cook County, Illinois, 60660.

8. The defendant Condominium Association is the Condominium Association for 5901 N. Sheridan Road, Chicago, Illinois, 60660.

9. The Defendant Chicagoland Community Management, Inc. is an Illinois corporation located at 1348 W. Concord Place #1, Chicago, Cook County, Illinois, 60642.

10. The Defendant Chicagoland Community Management is a property and real-estate management company hired by the Condominium Association to manage its building.

## III. FACTS

11. Beginning on or about January of 1997 and continuing to the date hereof, the Condominium Association, members of the Board of Directors ("Directors") have failed their fiduciary responsibility to clean, maintain, and fix internal plumbing, pipes, sewer systems, and grease traps inside the building high-rise in order to prevent continuous minor and major sewer backups and floods into Plaintiff's Unit 2F.

12. Ultimately, the Condominium Association failure to fix, maintain, and clean internal pipes and grease traps inside the building has interfered and deprived Plaintiff attempt to exercise his rights protected by the Fair Housing Act.

13. The Condominium Association, members of the Board of Directors ("Directors") and members of the Condominium Association on their own behalf and from time to time for and on behalf of the Condominium Association have also threatened, harassed, intimidated the Plaintiff with fictious fines, erroneous eviction notices, and by spreading false rumors about the Plaintiff and his parents as being the "illegitimate son" of Plaintiff's mother Charlotte Narkiewicz-Laine.

14. In the 1990s, when plaintiff's father, Sulo M. Laine and his wife's 24-hour nurse started to complain about the frequent sewage back-ups in the kitchen and bathroom sinks, the President of the Condominium Association, Sigrid G. Ingold ("Ingold"), would send plaintiff's father "plumbing bills" to retaliate for complaining about the problem rather than fixing the internal plumbing issues within the building's internal pipes.

15. In 2003, when plaintiff's father refused to pay an erroneous plumbing bill for a sewer backup in the building, which was sent to him by the Condominium Directors, Ingold had the Condominium Association's attorney file a lawsuit against the Narkiewicz-Laine,

misnaming him as the "Defendant," since he did not legally own the unit and did not reside in Unit 2F, which caused him in excess of $23,000 in legal costs to defend himself and have himself removed.

16. Like other senior citizens in the building, Plaintiff's father also refused to give Ingold his proxy vote so she could remain in power, as she also paid herself $50,000 a year as the building "manager," and was also known for taking kickbacks, gifts, and bribes from outside contractors, eventually leading to her eventually being caught extorting $45,000 in cash from a roofing contractor and depositing it into her private bank account.

17. Ingold labeled Plaintiff and his family as "dissidents"—a term she used to discriminate against other seniors in the building who would not give her their proxy votes.

18. And like other seniors in the building who did not give their proxy votes to Ingold, she punished and retaliated against Plaintiff's parents by not providing the Unit 2F with cable hook-up, despite the fact those "cable" charges have been continuously paid from 1997 through December 2025.

19. In another retaliatory measure, Ingold also forced Plaintiff's father to put Plaintiff's mother's dog to sleep months before she died or face a one hundred dollar ($100) a day fine.

20. Historically, Plaintiff's Unit 2F is not the only unit affected by frequent sewer backups and floods in this 15-story building on Lake Michigan with its 151 units built in 1970.

21. 5901 North Sheridan's entire "F-D" tire and up to several floors has had similar episodes.

22. In 2004, Unit 2F's immediate next-door neighbor, Ms. Pamela Miller, in Unit 2D,

who shares the same internal plumbing in tier F-D of the building, complained of sink backups in a memorandum to the Condominium Association and documented the events and was ultimately told by the Condominium Association (vis-à-vis Ingoldt) it was "her problem" and that there was "nothing 'we' could do about it."

23. In the same memorandum, Ms. Miller cited other condo owners experienced the same backups, specifically Ms. Joan Miarecki, and called these backups a "serious health hazard."

24. The Condominium Association (vis-à-vis Ingold) refused to investigate Miller's complaints, but sent Narkiewicz-Laine the plumbing bill from a licensed plumber that the association called to inspect the matter though the problems were the internal plumbing system that the building refused to maintain.

25. The sending the plumber bill to Plaintiff Narkiewicz-Laine was a retaliatory effort against his and other tenant's complaints about the kitchen and sewer water backups.

26. In 2005, Plaintiff's father wrote letters to Mayor Richard M. Daley, Attorney General Lisa Madigan, State of Illinois, and Congresswomen Jan Schakowsky reporting the constant sewer backups in his unit and that he lived in a constant health hazard environment and a seriously unsanitary condition for over eight (8) years depriving him of his housing rights.

27. In 2008, Unit 2F had a catastrophic sewer backup and flood while Plaintiff was working in Europe. Plaintiff received a telephone call from his downstairs neighbor in Unit 1F who reported that Unit 2F entirely filled up with an over 1/8 to 1/4-inch of sewer water and waste backup and dropped down into his Unit 1F.

28. This 2008 major sewer backup resulted in over $330,000.00 in damages to unit 2F, destroying walls, floors, cabinets, appliances, furniture, carpets, antiques, and personal belongings.

29. Plaintiff believed that this 2008 major sewer backup was a one-time event and made the necessary repairs to the unit; and when Plaintiff's father died in 2009, ownership of the unit transferred to Narkiewicz-Laine.

30. On June 27, 2018, however, and while Narkiewicz-Laine was again working in Europe, he was notified directly by email from "Linda" from Chicagoland Community Management informing and disclosing to him and admitting with documenting photographs that there had been yet another kitchen sewer backup in Unit 2F.

31. In 2018, neither the Chicagoland Community Management nor the Condominium Association took any steps to investigate or to remedy that sewer backup problem, not even summoning a plumber to investigate.

32. In November 2019, there was another major catastrophic sewer flood that again filled unit 2F entirely with an over 1/8 to 1/4-inch of sewer water and sewer waste backup.

33. This time, ServPro was called in to clean up the flood and informed Plaintiff that the entire Unit 2F had to be demolished for mold remediation, including the gutting of walls, ceilings, and floors and HVAC, together with kitchen and bathroom cabinet, fixtures, and appliances, and all personal belongings including furniture, books, clothing, and personal effects, as well as new renovation construction, resulting in damages in excess of $250,000.00.

34. From March 15, 2020 to Summer 2021, Plaintiff was under forced COVID lockdown

in Athens, Greece and could not return to the United States until May 2021.

35. In July 2021, Plaintiff arrived back to his Unit 2F only to discover there had been yet another catastrophic sewer flood.

36. Most recent, on June 6, 2025, another sewer backup was observed where sewer water and waste filled Unit 2F's bathroom toilet and bathtub.

37. As of the present date, Unit 2F remains in an unsanitary and health hazardous condition depriving Plaintiff of a safe, healthy place to live while still paying the $664.40 in monthly assessments plus special assessments, utilities, real estate taxes, and insurance for this Unit.

38. Since December 2019, plaintiff also been forced to pay $1,000 a month for off-site storage of personal belongings.

39. Total costs to date for paid assessments, utilities, taxes, insurance, and alterative storage of Plaintiff's remaining belongings since December 2019 has been $139,940.58.

40. Unit 2F is not sellable in its current condition, if sellable at all, particularly when Plaintiff discloses to any potential buyer the history of sewer backups and floods in Unit 2F over a course of almost 28 years.

41. The necessary repairs and losses from the recent 2019-2021 sewer floods actually exceed the value of the condominium.

42. As of the present date, Plaintiff has been deprived of a place to reside and is, in reality, homeless since November 2019.

43. Defendants have allowed this unlivable, health hazard, and dangerous environment to continue through their own negligence and their refusal to make adequate repairs and provide necessary maintenance of the building's internal plumbing system, thereby

preventing Plaintiff from exercising his rights under the Fair Housing Act.

45. Thorndale Beach Condominium Association and Chicagoland Community Management are aware of the elderly and handicapped Plaintiff's lack of housing and the health and safety risk of his Unit 2F and have done nothing to provide Plaintiff with any alternative housing or any relief.

45. Only recently this June, the Defendants have actually threatened to "evict" Plaintiff for not paying Defendant's "attorney fees" used against the Plaintiff.

47. Such actions have deprived the Plaintiff of his home where Narkiewicz-Laine has lived since 2009 and his "home" while acting as the singular caretaker of his elderly, sick, and bedridden parents since 1997 for a total of twenty-eight (28) years.

48. As a direct consequence of the Defendants' malicious, negligent, harassing, and discriminatory actions complained of herein, done willfully, maliciously and/or with reckless disregard for the rights of the elderly handicapped plaintiff.

49. Plaintiff has suffered and continues to suffer emotional and financial hardships. The Unit in its current condition is a health hazard because of Defendants' refusal to provide proper plumbing maintenance; and based on the history of sewer floods in this Unit, the Unit remains under continued threat of future dangerous and unsanitary sewer backups and future sewer floods and has jeopardized Plaintiff rights under the Fair Housing Act.

50. The "eviction" threat has caused Plaintiff immense emotional and financial distress and thereby making his medical disabilities and medical condition to further deteriorate.

51. Plaintiff has filed complaints with the U.S. Department of Housing and Urban Development; the Civil Rights Division, Disability Rights Section, U.S. Department of Justice; and the Illinois Office of the Attorney General Civil Rights Bureau.

## COUNT I

### ELDERLY HANDICAPPED DISCRIMINATION UNDER 42 U. S. C. §3604 (f) (1)

52. Plaintiff Christian Narkiewicz-Laine restates and realleges paragraphs 1 thru 50 in this complaint as paragraphs 1 thru 50 of this Count I as though the same were fully set forth and pleaded herein.

53. The actions of the Defendants in interfering with the Plaintiff's housing rights based on the elderly disability of Christian Narkiewicz-Laine constitutes discrimination on the basis of handicap in violation of Section 804 of the Fair Housing Act, 42 U.S.C. §3604 (f) (1).

## COUNT II

### ELDERLY HANDICAPPED DISCRIMINATION UNDER 42 U. S. C. §3604 (f) (1)

54. Plaintiff Christian Narkiewicz-Laine restates and realleges paragraphs 1 thru 50 in this complaint as paragraphs 1 thru 50 of this Count II as though the same were fully set forth and pleaded herein.

55. The actions of the Defendants in interfering with the Plaintiff's housing rights based on the elderly disability of Christian Narkiewicz-Laine constitutes discrimination on the basis of handicap in violation of Section 804 of the Fair Housing Act, 42 U.S.C. §3604 (f) (1).

## COUNT III

### HANDICAPPED DISCRIMINATION UNDER 42 U. S. C. §3604 (f) (3) (B)

56. Plaintiff Christian Narkiewicz-Laine restates and realleges paragraphs 1 thru 50 in this complaint as paragraphs 1 thru 50 of this Count III as though the same were fully

set forth and pleaded herein.

57. The actions of Defendants in discriminating against Narkiewicz-Laine in refusing to clean and provide maintenance and service of internal plumbing systems within 5901 North Sheridan Road and to keep Unit 2F free from constant dangerous and unhealthy sewer backups and sewer floods, as well the subsequent destruction of the Unit and Plaintiff's personal belongings, prevents Narkiewicz-Laine's equal opportunity to use and enjoy his dwelling based on his elderly disability constitutes discrimination on the basis of elderly handicap in violation of Section 804 of the Fair Housing Act 42 U. S. C. §3604 (f) (3) (B) as amended.

## COUNT IV

## ELDERLY HANDICAPPED DISCRIMINATION UNDER 42 U. S. C. §3617

58. Plaintiff Christian Narkiewicz-Laine restates and realleges paragraphs 1 thru 50 in this complaint as paragraphs 1 thru 50 of this Count IV as though the same were fully set forth and pleaded herein.

59. Actions of Defendants have interfered with Plaintiff's housing rights based on the elderly disability of Christian Narkiewicz-Laine constitutes discrimination on the basis of elderly handicap in violation of Section 818 of the Fair Housing Act, 42 U. S. C. §3617.

## COUNT V

## NEGLIGENCE

60. Plaintiff Christian Narkiewicz-Laine restates and realleges paragraphs 1 thru 50 in this complaint as paragraphs 1 thru 50 of this Count V as though the same were fully set forth and pleaded herein.

61. Plaintiff has been injured by Defendants' reckless disregard and continuous

negligence by not maintaining proper repairs and routine maintenance and the cleaning of internal building pipes thereby causing continuous health hazardous sewer backups and dangerous sewer floods into Plaintiff's Unit 2F, leading to an unsanitary, harmful, and dangerous living environment while threatening and intimidating the Plaintiff, thereby causing injury to elderly disability of Christian Narkiewicz-Laine constitutes discrimination on the basis of elderly handicap in violation of Section 818 of the Fair Housing Act, 42 U. S. C. §3617.

62. Thorndale Beach North Condo Association and its management have been responsible for the constant minor and major sewer back-ups in Unit 2F by not providing proper plumbing maintenance as stated by the building's own plumber Mr. Cazim Perazic in a deposition on January 19, 2022.

## COUNT VI

## BREACH OF FIDUCIARY DUTY

63. Plaintiff Christian Narkiewicz-Laine restates and realleges paragraphs 1 thru 50 in this complaint as paragraphs 1 thru 50 of this Count VI as though the same were fully set forth and pleaded herein.

64. That at all times relevant, the Defendants were in a fiduciary relationship to the Condominium Association and its members including Christian Narkiewicz-Laine.

65. That the Condominium Association is responsible, as principal for the acts of its servants.

66. That the Defendants have breached their fiduciary duty to Narkiewicz-Laine by failing to discharge the duties owed to him and further acting in willful and wanton manner and engaging in bad faith and unfair dealing.

67. The defendants breached their fiduciary duty to Narkiewicz-Laine when they failed to provide proper repairs and routine maintenance and the cleaning of internal building pipes as stated by the Condominium Association's own plumber Cazim Perazic, thereby causing continuous health hazardous sewer backups and dangerous sewer floods into Plaintiff's Unit 2F, leading to an unsanitary, harmful, and dangerous living environment, as a superior in the relationship that had the ability to exert influence over Narkiewicz-Laine because of that superior standing.

## COUNT VII

### TORTIOUS INTERENCE WITH A CONTRACTUAL RELATIONSHIP

68. Plaintiff Christian Narkiewicz-Laine restates and realleges paragraphs 1 thru 50 in this complaint as paragraphs 1 thru 50 of this Count VII as though the same were fully set forth and pleaded herein.

69. The actions of Defendants in threating to revoke Narkiewicz-Laine's right to live in his Unit constitutes tortious interference with a contractual relationship.

## COUNT VIII

### FRAUDULENT MISREPRESENTATION

70. Plaintiff Christian Narkiewicz-Laine restates and realleges paragraphs 1 thru 50 in this complaint as paragraphs 1 thru 50 of this Count VIII as though the same were fully set forth and pleaded herein.

71. The actions of Defendants in encouraging, reporting, and supporting false claims against Narkiewicz-Laine that he owes Defendants' "attorney fees" and fraudulent "late fees" to induce Plaintiff to evacuate his domicile constitutes fraudulent misrepresentation.

## COUNT IX

## INJUNTIVE RELIEF

72. Plaintiff Christian Narkiewicz-Laine restates and realleges paragraphs 1 thru 50 in this complaint as paragraphs 1 thru 50 of this Count IX as though the same were fully set forth and pleaded herein.

73. The actions of Defendants in injuring the Plaintiff including but not limited to being barred from his "home" of twenty-eight (28) years because of the Defendants' refusal to fulfill their fiduciary responsibility and duty to manage, fix, repair, clean, and provide necessary maintenance of the building's internal pipes to prevent sewer backups and catastrophic sewer floods in Plaintiff's Unit, will continue until and unless the court enters an injunction for the Plaintiff and for the Plaintiff's right to fair housing.

WHEREFORE Plaintiff's request that this court enter judgement for Plaintiff and against the defendant as follows:

   a. Temporary, Preliminary, and Permanent Injunctive relief prohibiting harassment, retaliation, and discrimination by Defendants, and precluding any action to assess or collect any fines or attorney fees during the pendency of this action;

   b. Temporary, Preliminary, and Permanent Injunction providing that Defendants cannot refuse to participate and negotiate in good faith to provide a reasonable accommodation for the elderly handicap Plaintiff;

   c. Compensatory damages;

   d. Punitive damages;

   e. Attorney's fees and costs;

   f. Any such additional relief that the court deems just and proper.

Respectably Submitted,

_____

Christian Narkiewicz-Laine

Christian Narkiewicz-Laine
601 South Prospect Street
Galena, IL 61036
815/777-4444